CYNTHIA FORD, PETITIONER-APPELLEE v. NORTH CAROLINA DEPARTMENT OF ENVIRONMENT, HEALTH, AND NATURAL RESOURCES, RESPONDENT-APPELLANT

No. 919SC590

(Filed 4 August 1992)

**Administrative Law and Procedure § 44 (NCI4th) — administrative law judge—recommended decision not adopted—findings and conclusion by agency—no error**

There was no error in the appeal of a sediment control fine where the administrative law judge made findings of fact and conclusions of law and recommended that no penalty be assessed, the action was referred to the Secretary of the Department for final agency decision, and the Secretary selectively

FORD v. N.C. DEPT. OF ENVIRONMENT, HEALTH, AND NAT. RES.

[107 N.C. App. 192 (1992)]

adopted and rejected findings in the recommended decision, adopted some conclusions of law and rejected others, made his own conclusions of law, adopted part of the recommended decision, and rejected part of the decision. The Department's order explains why it changed the findings of fact and explains that different conclusions must be drawn on the facts as found by it, and the Court of Appeals reluctantly agreed that the Department's order met the spirit of the legislative mandates. N.C.G.S. § 150B-51.

**Am Jur 2d, Administrative Law §§ 434-440.**

APPEAL by North Carolina Department of Environment, Health and Natural Resources (hereinafter the Department) from order entered 11 March 1991 in PERSON County Superior Court by *Judge Henry W. Hight, Jr.* Heard in the Court of Appeals 13 April 1992.

Petitioner-appellee Cynthia Ford (hereinafter Ford) was fined by the Department for alleged violations of G.S. § 113A-64, the North Carolina Sedimentation Pollution Control Act (hereinafter the Act). The record reveals the following facts and circumstances.

Ford, along with her husband, planned to build a roller skating rink in Roxboro, North Carolina. Ford purchased the land on which she intended to build the rink and then secured the necessary local permits. Ford began construction of the rink on or about 28 May 1986. The construction site was inspected by a representative of the North Carolina Department of Natural Resources and Community Development (hereinafter NRCD), the predecessor of the Department on 30 May 1986. Ford was told of several actions which she had to perform regarding the development of the rink. She was also informed of the requirements of the Act.

The construction site was inspected numerous times between 30 May 1986 and 14 June 1986. On 14 June 1986, Ford received a notice of violation of the Act from John Holley, regional engineer of the Land Quality Section for the Raleigh region of NRCD. The notice of violation stated the following reasons for violations of the Act:

(1) The erosion and sedimentation control plan submitted by Ford was inadequate.

(2) Land-disturbing activity on the construction site had been carried down to a nearby creek bordering the project

without the installation of a necessary buffer zone to protect the creek.

(3) Sedimentation and erosion control devices had not been installed increasing the potential for off-site sedimentation.

(4) Failure to take all reasonable measures to protect public and private property from damage by land-disturbing activity.

Ford was also informed that new construction at the site could not begin until the violations had been remedied.

The construction site was continually inspected following the notice of violation until August 1987. Each inspection revealed alleged continued violations of the requirements of the Act. Ford was found to be in constant violation of the requirement of an adequate sedimentation and erosion control plan for the construction site. On 31 August 1987, Ford was assessed a civil penalty by the Director of the Division of Land Resources of NRCD. This penalty was in the amount of forty dollars ($40.00) per day for violations of the Act for a 431 day period beginning 14 June 1986 and ending 17 August 1987. The total penalty assessed against Ford was seventeen thousand two hundred forty dollars ($17,240.00).

Ford appealed the civil penalty assessment by filing a Petition for Administrative Hearing with the Office of Administrative Hearings (hereinafter OAH) on 30 September 1987. On 25 November 1987, Ford's husband made a special appearance through counsel to contest NRCD's proposed amendment to the August civil penalty assessment to include Mr. Ford as a person against whom the penalty could be assessed. NRCD filed a motion to amend the civil penalty on 17 December 1987 which was approved on 11 January 1988. Mr. Ford appealed the civil penalty assessment by filing a Petition for Administrative Hearing before OAH on 13 January 1988.

On 18-19 April 1988, a hearing was held before an Administrative Law Judge (hereinafter ALJ) to determine whether Ford or her husband violated the Act and, if so, whether the civil penalty assessed was appropriate. On 10 February 1989, the ALJ issued a recommended decision pursuant to G.S. § 150B-34 which included findings of fact, conclusions of law and a recommended decision that no penalty be assessed against Ford or her husband.

**FORD v. N.C. DEPT. OF ENVIRONMENT, HEALTH, AND NAT. RES.**

[107 N.C. App. 192 (1992)]

This action was referred to the Secretary of the Department by the OAH for final agency decision on 5 June 1989 who, in turn, issued a Final Agency Decision on 30 November 1989. In his final decision, the Secretary adopted and rejected, selectively, findings of facts set out in the recommended decision of the ALJ. The Secretary further adopted the ALJ's conclusions of law pertaining to Ford's husband and rejected the ALJ's conclusions of law pertaining to Ford. The Secretary finally made his own conclusions of law, adopted part of the ALJ's recommended decision by declining to assess a civil penalty against Ford's husband and rejected part of the ALJ's recommended decision by assessing an eight thousand six hundred and twenty dollar ($8,620.00) civil penalty against Ford for violations of the Act.

Ford appealed the final agency decision by filing a Petition for Judicial Review on 27 December 1989 in Person County Superior Court. This petition came on for hearing on 18 February 1991. The trial court reversed the Final Agency Decision and adopted the ALJ's recommended decision on the grounds that the Secretary failed to state specific reasons why he did not adopt the ALJ's conclusions of law and recommended decision. The Department appeals.

*Ramsey, Galloway & Abell, by Julie A. Abell, for petitioner-appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Kathryn Jones Cooper, for respondent-appellant.*

WELLS, Judge.

The Department assigns error to the trial court's findings and conclusion that the Final Agency Decision did not state specific reasons for not adopting the ALJ's conclusions of law and recommended decision. The Department further assigns as error the trial court's conclusion of law that further judicial review pursuant to G.S. § 150B-51(b) was not required because it failed to state specific reasons why it did not adopt the ALJ's recommended decision.

This case presents a troubling question of legislative policy and intent in the area of administrative law. Prior to 1985, it was the usual practice for administrative agencies of state government to hear and determine their own contested cases. Our General

Assembly, after careful study and discussion, determined that the system needed change. There is no better way to put it than to go directly to the statutory enactments which implemented a new approach to the resolution of contested cases found in the pertinent sections of Article 60 of Chapter 7A of our General Statutes:

## Article 60

## Office of Administrative Hearings

### § 7A-750. Creation; status; purpose.

There is created an Office of Administrative Hearings. The Office of Administrative Hearings is an independent, quasi-judicial agency under Article III, Sec. 11 of the Constitution and, in accordance with Article IV, Sec. 3 of the Constitution, has such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purpose for which it is created. The Office of Administrative Hearings is established to provide a source of independent hearing officers to preside in administrative cases and thereby prevent the commingling of legislative, executive, and judicial functions in the administrative process. It shall also maintain dockets and records of contested cases and shall codify and publish all administrative rules.

### § 7A-751. Agency head; powers and duties.

The head of the Office of Administrative Hearings is the Chief Administrative Law Judge. He shall serve as Director and have the powers and duties conferred on him by this Chapter and the Constitution and the laws of this State. . . .

### § 7A-752. Chief Administrative Law Judge; appointments; vacancy.

The Chief Administrative Law Judge of the Office of Administrative Hearings shall be appointed by the Chief Justice for a term of office of four years. . . .

The Chief Administrative Law Judge shall designate one administrative law judge as senior administrative law judge. The senior administrative law judge may perform the duties of Chief Administrative Law Judge if the Chief

**FORD v. N.C. DEPT. OF ENVIRONMENT, HEALTH, AND NAT. RES.**

[107 N.C. App. 192 (1992)]

Administrative Law Judge is absent or unable to serve temporarily for any reason.

### § 7A-753. Additional administrative law judges; appointments; specialization.

The Chief Administrative Law Judge shall appoint additional administrative law judges to serve in the Office of Administrative Hearings in such numbers as the General Assembly provides. No person shall be appointed or designated an administrative law judge except as provided in this Article.

The Chief Administrative Law Judge may designate certain administrative law judges as having the experience and expertise to preside at specific types of contested cases and assign only these designated administrative law judges to preside at those cases.

### § 7A-754. Qualifications; standards of conduct; removal.

Only persons duly authorized to practice law in the General Court of Justice shall be eligible for appointment as the Director and chief administrative law judge or as an administrative law judge in the Office of Administrative Hearings. Neither the chief administrative law judge nor any administrative law judge may engage in the private practice of law as defined in G.S. 84-2.1 while in office; violation of this provision shall be grounds for removal.

. . .

Having thus provided for the establishment of this "independent" scheme of hearing and determining contested cases, the Legislature amended the Administrative Procedure Code to reflect and emphasize its policy set out in Chapter 7A. We turn to those pertinent provisions of Chapter 150B to make that point.

In summary, under the new method of hearing and determining contested cases, as found in G.S. § 150B, sections 24 through 33, ALJs have been given many of the powers and duties generally regarded as necessary to the independent function of our courts of justice.

We now turn to the manner in which the Legislature has emphasized the primary function of ALJs to hear and determine contested cases.

FORD v. N.C. DEPT. OF ENVIRONMENT, HEALTH, AND NAT. RES.

[107 N.C. App. 192 (1992)]

### § 150B-34. Recommended decision or order of administrative law judge.

(a) Except as provided in G.S. 150B-36(c), in each contested case the administrative law judge shall make a recommended decision or order that contains findings of fact and conclusions of law.

Further emphasizing the decision-making role of ALJs, we refer to the pertinent contents of G.S. § 150B-36(b):

A final decision or order in a contested case shall be made by the agency in writing after review of the official record as defined in G.S. 150B-37(a) and shall include findings of fact and conclusions of law. If the agency does not adopt the administrative law judge's recommended decision as its final decision, the agency shall state in its decision or order the specific reasons why it did not adopt the administrative law judge's recommended decision. The agency may consider only the official record prepared pursuant to G.S. 150B-37 in making a final decision or order, and the final decision or order shall be supported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31.

The mandate expressed in section 36(b) is then carried through to the judicial review process:

### § 150B-51. Scope of review.

(a) Initial Determination in Certain Cases.—In reviewing a final decision in a contested case in which an administrative law judge made a recommended decision, the court shall make two initial determinations. First, the court shall determine whether the agency heard new evidence after receiving the recommended decision. If the court determines that the agency heard new evidence, the court shall reverse the decision or remand the case to the agency to enter a decision in accordance with the evidence in the official record. Second, *if the agency did not adopt the recommended decision, the court shall determine whether the agency's decision states the specific reasons why the agency did not adopt the recommended decision. If the court determines that the agency did not state specific reasons why it did not adopt a recommended decision, the court shall reverse the decision or remand the*

*case to the agency to enter the specific reasons.* (Emphasis added.)

Despite having thus developed a new system of administrative hearing, emphasizing the independent role and function of ALJs, the Legislature has continued to give the interested agency the duty and responsibility to enter final decisions, either adopting the ALJ's recommended decision, or, in the alternative, entering its own order. *See* G.S. § 150B-36. Thus, the interested agency still has the authority to make its own findings of fact, conclusions of law and decision. The tension between the role and function of the independent hearing ALJ and the interested agency is clearly demonstrated in this case. The Department simply viewed the record of evidence differently from the ALJ, rejected many of the ALJ's findings of fact, substituted its own, and on those grounds drew different conclusions of law—all leading to its rejection of the ALJ's recommended decision. The bottom-line difference is that in its version of the facts, the agency found Mrs. Ford's violations to be willful. Then, even though it found the "danger" to be "not substantial," it saw fit to levy a heavy fine indeed—$8,620.00.

The Department's order explains why it changed the findings of fact. Then, its order explains that on the facts as found by it, different conclusions of law must be drawn. We reluctantly agree that the Department's order meets the spirit of the mandates we have spoken to in this opinion. Now this case must go back to the Superior Court, where that Court must once again resolve Mrs. Ford's appeal. *See* G.S. § 150B-51. This case therefore further illustrates that the present system of resolving contested cases carries with it the inherent risk of inefficient, if not wasteful, use of judicial resources. It is certainly not inconceivable that when the trial court resolves this case once again, the case may return to this Court.

In this case, where we are presented with one narrow question, the Department has filed a record on appeal totaling 303 pages, most of which is not pertinent to the question before us. We therefore order that the Department be charged with the entire cost in this Court associated with the record.

For the reasons stated, the order of the court below is reversed and this case is remanded for further appropriate proceedings.

Reversed and remanded.

Judges ARNOLD and EAGLES concur.