IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-209

No. COA21-482

Filed 5 April 2022

Wake County, No. 20 OSP 02154

CECIL JOHN RUSSELL, Petitioner,

v.

NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, Respondent.

Appeal by Respondent from order entered on 23 December 2020 by Administrative Law Judge Melissa Owens Lassiter in the Office of Administrative Hearings. Heard in the Court of Appeals 23 February 2022.

*Jennifer J. Knox for Petitioner-Appellee.*

*Attorney General Joshua H. Stein, by Assistant Attorney General Adrina G. Bass, for Defendant-Appellant.*

JACKSON, Judge.

¶ 1 The North Carolina Department of Public Safety ("Respondent") appeals from a final decision in a contested case in the Office of Administrative Hearings ("OAH"). We affirm the order of the administrative law judge ("ALJ").

## I. Background

¶ 2 On 12 November 2018, Cecil John Russell ("Petitioner") was employed as a corrections officer at Central Prison in Raleigh, North Carolina, when he suffered a work-related injury. As a result of the injury, Petitioner was placed on a leave of

absence. During his leave of absence, Petitioner received medical benefits and disability compensation under North Carolina's Workers' Compensation Act.

¶ 3 On 5 July 2019, Petitioner was allowed to return to work in a light duty position. The next month, however, he suffered a reinjury during his recertification as a law enforcement officer. As a result of the reinjury, Petitioner was placed on another leave of absence, and began to receive workers' compensation benefits again.

¶ 4 On 17 January 2020, Petitioner requested job placement assistance from Respondent. Ms. R. Hinton, a human resources professional employed by Respondent, testified at the contested case hearing that when one of Respondent's employees is released from a physician's care after a work-related injury with permanent restrictions, an effort is made to locate a new position for the employee where the employee can work in a full duty capacity. Ms. Hinton described the job placement assistance process as follows: when an employee is released from a physician's care with permanent restrictions, meaning the employee cannot return to the employee's previous job at full duty, Respondent sends the employee a letter confirming that the employee has reached maximum medical improvement but still has a disability, and includes a blank employment application with the letter. The employee then has 15 days to return the application, and after receiving the completed application, Respondent conducts two job searches for the employee. Respondent's recruitment section determines the possible positions for which the

employee is qualified based on the contents of the application, and then human

resources runs a report of vacant positions within a 50-mile radius of the employee.

Respondent runs two of these reports once a week during two consecutive weeks. If

no vacant position is located during these job searches, the employee is separated

from employment due to unavailability.

The job searches performed for Petitioner were unsuccessful. On 12 February

2020, Respondent sent Petitioner a Pre-Separation Letter. The Pre-Separation

Letter explained:

> when an employee is on workers' compensation leave of
> absence, and the employee is unable to return to all of the
> position's essential duties as set forth in the employee's job
> description or designated work schedule due to a medical
> condition or the vagueness of a medical prognosis, and the
> employee and the agency are unable to reach agreement on
> a return to work arrangement that meets both the needs of
> the agency and the employee's medical condition, a
> separation may occur on the earliest of the following dates:
>
> (i)     after the employee has reached maximum medical
>         improvement for the work-related injury for which
>         the employee is on workers' compensation leave of
>         absence and the agency is unable to accommodate
>         the employee's permanent work restrictions related
>         to such injury; or
>
> (ii)    12 months after the date of the employee's work-
>         related injury.

The Pre-Separation Letter noted that Petitioner was informed on 28 January 2020

that "there were no suitable vacant positions available given [his] medical restrictions

and qualifications[,]" and advised as follows:

> Should you remain unavailable, prior to a recommendation for your separation, you will be given the opportunity to meet with me or propose in writing alternative methods of accommodation to avoid this separation. If you would like to meet, you should contact me at [redacted] by February 27, 2020. If you would like to submit your proposal in writing, it should be received at this office by February 27, 2020.

> If you remain unavailable after February 27, 2020, I will recommend your separation from employment under the provision of Separation Due to Unavailability[.] Such a separation is an involuntary separation and not considered disciplinary action.

¶ 6 After receiving the letter, Petitioner contacted his supervisor and requested the meeting offered in the letter. Petitioner's supervisor told him the meeting would be pointless if he could not return to full duty work by the 27 February 2020 deadline. Petitioner stated that he wanted to propose an alternative method of accommodation, but needed assistance doing so. Instead of receiving any assistance or the opportunity to meet with his supervisor, Petitioner was told taking either step would be futile.

¶ 7 On 3 March 2020, Respondent sent Petitioner a Letter of Separation informing him that he was being separated from his employment due to unavailability. The Letter of Separation described Petitioner's appeal rights as follows:

> If you are a "career State employee" (as defined in N.C.G.S. § 126-1.1) and wish to appeal this decision, you must do so in writing within fifteen (15) calendar days. The appeal must be submitted by using the Step 1 Grievance Filing

> Form HR 555. The appeal must be mailed to the Grievance Intake Coordinator, Department of Public Safety, 512 N. Salisbury Street, 4201 Mail Service Center, Raleigh, NC 27699-4201. As an alternative to mail, the appeal may be mailed to [redacted e-mail address], or hand delivered to the State Capitol Police, 417 N. Salisbury Street, Raleigh, NC 27603, between the hours of 8:00 a.m. and 5:00 p.m.

Petitioner received the Letter of Separation on 9 March 2020, so the deadline for submission of his Step 1 Grievance Form was 24 March 2020.

¶ 8 On 20 March 2020, Petitioner completed a Step 1 Grievance Form to internally appeal Respondent's decision to separate him from his employment. He testified that the Grievance Form was mailed to Respondent's Raleigh office from his home in Fayetteville that day and that he personally observed his wife stamp the envelope and place it in the mailbox. During this timeframe, many employees of Respondent were working remotely because of the COVID-19 pandemic, and the mail was not being checked daily.

¶ 9 On 7 April 2020, Petitioner submitted a photograph of the Grievance Form he completed on 20 March 2020 to Respondent's Grievance Intake Coordinator by e-mail. The next day, the Grievance Intake Coordinator informed him that she was unable to print the Grievance Form using the photograph Petitioner sent. A date stamp on Petitioner's Grievance Form in the record on appeal suggests that it was received by Respondent on 8 April 2020. On 9 April 2020, Petitioner e-mailed another copy of the Grievance Form to Respondent's Grievance Intake Coordinator, who confirmed that

this second copy was legible and had been received.

¶ 10          In a 16 April 2020 letter, Respondent informed Petitioner that it considered the grievance untimely. Respondent took the position that Petitioner had failed to meet the 24 March 2020 deadline because Respondent did not receive the grievance until 7 April 2020—the date Petitioner first attempted to provide Respondent with a copy by e-mail—despite the 8 April 2020 date stamp in the record on appeal and Respondent's 9 April 2020 confirmation of receipt by e-mail.

¶ 11          On 26 May 2020, Petitioner initiated a contested case in OAH, alleging that he had been discharged without just cause and without sufficient action to place him in a different position. On 25 June 2020, Respondent made a motion to dismiss, arguing that OAH lacked subject matter jurisdiction because Petitioner had failed to first exhaust his administrative remedies by timely filing a Step 1 Grievance Form. On 2 July 2020, Petitioner filed a response to the motion to dismiss. On 3 August 2020, the ALJ denied Respondent's prehearing motion to dismiss. On 7 August 2020, Petitioner filed a prehearing statement. On 11 August 2020, Respondent filed a prehearing statement.

¶ 12          The matter came on for hearing on 8 October 2020. Respondent renewed its motion to dismiss at the beginning of the hearing, which the ALJ denied. Petitioner's supervisor, who had signed both the 12 February 2020 Pre-Separation Letter and 3 March 2020 Separation Letter, did not testify. Respondent's Grievance Intake

Coordinator essentially testified that she first received a copy of Petitioner's grievance on 7 April 2020 and that the original copy of Petitioner's grievance had never been received. On cross-examination, the Grievance Intake Coordinator admitted that she could not remember which days of the week she was in the office during the March to April 2020 timeframe, but stated that she was most likely in the office at least three days a week.

In an order entered on 23 December 2020, the ALJ reversed Respondent's decision to separate Petitioner from his employment and ordered that he be retroactively reinstated to the same or similar position he previously held and receive back pay, benefits, and attorney's fees. The ALJ also denied Respondent's renewed motion to dismiss based on "the effects COVID-19 has had on the operation of our State government offices[.]"

Respondent entered timely notice of appeal on 21 January 2021 and entered a corrected notice of appeal the following day.

## II. Analysis

Respondent argues the ALJ erred in denying Respondent's motions to dismiss for lack of subject matter jurisdiction because Petitioner failed to first exhaust his administrative remedies before filing the contested case in OAH. The ALJ made no express finding regarding the timeliness of the filing of Petitioner's Step 1 Grievance Form but denied both of Respondent's motions to dismiss and concluded she had

subject matter jurisdiction over the case. Based on these rulings, the ALJ necessarily found Petitioner's Step 1 Grievance was timely filed, despite not doing so expressly. We hold that there is a rational basis in the evidence to support this finding and affirm the order of the ALJ.

## A. Standard of Review

"Chapter 150B, the Administrative Procedure Act, specifically governs the scope and standard of this Court's review of an administrative agency's final decision." *Harris v. N.C. Dep't of Pub. Safety*, 252 N.C. App. 94, 98, 798 S.E.2d 127, 132, *aff'd*, 370 N.C. 386, 808 S.E.2d 142 (2017). Chapter 150B provides:

> The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> (1)  In violation of constitutional provisions;
>
> (2)  In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
>
> (3)  Made upon unlawful procedure;
>
> (4)  Affected by other error of law;
>
> (5)  Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6)  Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2021). "The standard of review is dictated by the

substantive nature of each assignment of error." *Harris*, 252 N.C. App. at 99, 798 S.E.2d at 132 (citing N.C. Gen. Stat. § 150B-51(c)). "[Q]uestions of law receive *de novo* review, whereas fact-intensive issues such as sufficiency of the evidence to support an agency's decision are reviewed under the whole-record test." *Id.* (citation omitted).

¶ 17        "The 'whole record' test requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.'" *Amanini v. N.C. Dep't of Hum. Res.*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994) (citation omitted). "As distinguished from the 'any competent evidence' test and a *de novo* review, the 'whole record' test gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *Bennett v. Hertford Cnty. Bd. of Educ.*, 69 N.C. App. 615, 618, 317 S.E.2d 912, 915 (1984) (internal marks and citation omitted). "[T]he manner of our review is [not] governed merely by the label an appellant places upon an assignment of error; rather, we first determine the actual nature of the contended error, then proceed with an application of the proper scope of review." *Amanini*, 114 N.C. App. at 675, 443 S.E.2d at 118.

## B. The ALJ's Decision Has a Rational Basis in the Evidence

### 1. *Separation Due to Unavailability*

¶ 18        Codified in Chapter 126 of our General Statutes, the North Carolina Human

Resources Act governs personnel actions against state employees. *Hunt v. N.C. Dep't of Pub. Safety*, 260 N.C. App. 40, 44, 817 S.E.2d 257, 260-61 (2018). Generally speaking, "[n]o career State employee . . . shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." N.C. Gen. Stat. § 126-35(a) (2021). State employees enjoy "a property interest [in] continued employment created by N.C. Gen. Stat. § 126-35 and protected by the Due Process Clause of the United States Constitution." *Emp. Sec. Comm'n v. Peace*, 128 N.C. App. 1, 10-11, 493 S.E.2d 466, 472 (1997) (citations omitted). However, on a non-disciplinary basis, state employees can be involuntarily separated from their employment if they are unable to perform their duties because they are unavailable to work under a provision of the North Carolina Administrative Code providing for "Separation Due to Unavailability." *See* 25 N.C. Admin. Code 1C.1007 (2021).

¶ 19 When an employee has been on a leave of absence because of a work-related injury, 25 N.C. Admin. Code 1C.007(a)(3) provides in relevant part that the employee may be separated from the employee's employment due to unavailability when

> the employee is unable to return to all of the position's essential duties as set forth in the employee's job description or designated work schedule due to a medical condition or the vagueness of a medical prognosis, and the employee and the agency are unable to reach agreement on a return to work arrangement that meets both the needs of the agency and the employee's medical condition[.]

*Id.* 1C.1007(a)(3). In such a situation,

a separation may occur on the earliest of the following dates:

> (A) after the employee has reached maximum medical improvement for the work related injury for which the employee is on workers' compensation leave of absence and the agency is unable to accommodate the employee's permanent work restrictions related to such injury; or

> (B) 12 months after the date of the employee's work related injury.

*Id.*

¶ 20        Subsections (b) and (c) of subchapter 1C, section .1007 delineate the process the employing agency must follow:

> (b)      The employing agency shall send the employee written notice of the proposed separation in a Pre Separation Letter.  The letter shall include the employing agency's planned date of separation, the efforts undertaken to avoid separation, and why the efforts were unsuccessful. This letter shall be sent to the employee at least 15 calendar days prior to the employing agency's planned date of separation.  This letter shall include a deadline for the employee to respond in writing no less than five calendar days prior to the employing agency's planned date of separation.

> (c)      If the agency and employee are unable to agree on terms of continued employment or the employee does not respond to the Pre Separation letter, the employing agency shall send the employee written notice in a Letter of Separation.  The letter shall be sent no earlier than 20 calendar days after the Pre Separation letter is sent to the employee.  The Letter of Separation shall state the actual date of separation, specific reasons for the separation and set forth the employee's right of appeal. . . .

*Id.* 1C.1007(b), (c).

North Carolina General Statute § 126-34.01 provides that a state employee "having a grievance arising out of or due to the employee's employment shall first discuss the problem or grievance with the employee's supervisor, . . . [and] [t]hen . . . shall follow the grievance procedure approved by the State Human Resources Commission." N.C. Gen. Stat. § 126-34.01 (2021). Importantly, separation due to unavailability "may be grieved or appealed." 25 N.C. Admin. Code 1C.007(c) (2021). "The burden of proof on the agency in the event of a grievance . . . shall be to prove that the employee was unavailable, that efforts were undertaken to avoid separation, and why the efforts were unsuccessful." *Id.* After an appeal of an involuntary separation due to unavailability through the grievance process, "the final agency decision shall set forth the specific acts or omissions that are the basis of the employee's dismissal." *Id.* 1J.0613(h).

"Once a final agency decision is issued, a . . . State employee may appeal an adverse employment action as a contested case pursuant to the method provided in N.C. Gen. Stat. § 126-34.02[.]" *Harris*, 252 N.C. App. at 98, 798 S.E.2d at 131. Under N.C. Gen. Stat. § 126-34.02(b), there are six grounds for initiating a contested case in OAH, the third of which includes "appeal[ing] an involuntary nondisciplinary separation due to an employee's unavailability[.]" N.C. Gen. Stat. § 126-34.02(b)(3) (2021). In such a case, "the agency shall only have the burden to prove that the

employee was unavailable." *Id.* If the agency fails to meet this burden, the ALJ presiding over the case may (1) reinstate the employee to the employee's previous position; (2) "[o]rder the employment, promotion, transfer, or salary adjustment of any individual to whom it has been wrongfully denied"; or (3) "[d]irect . . . payment for any loss of salary which has resulted from the improper action of the appointing authority." *Id.* § 126-34.02(a). ALJs are "free to substitute their judgment for that of the agency[,]" *Harris*, 252 N.C. App. at 102, 798 S.E.2d at 134, and thus "have been given many of the powers and duties generally regarded as necessary to the independent function of our courts of justice[,]" *Ford v. Dep't of Env't, Health & Nat. Res.*, 107 N.C. App. 192, 197, 419 S.E.2d 204, 207 (1992). Either party can appeal to our Court from the ALJ's decision. *Harris*, 252 N.C. App. at 96, 798 S.E.2d at 130-31.

### 2. *Subject Matter Jurisdiction*

"The right to appeal to an administrative agency is granted by statute, and compliance with statutory provisions is necessary to sustain the appeal." *Lewis v. N. Carolina Dep't of Hum. Res.*, 92 N.C. App. 737, 739, 375 S.E.2d 712, 714 (1989). The failure to use the agency grievance process before initiating a contested case in OAH deprives OAH of subject matter jurisdiction over the case. *Nailing v. Univ. of N.C.*, 117 N.C. App. 318, 324, 451 S.E.2d 351, 355 (1994).

Subject matter jurisdiction is jurisdiction over the nature

of the case and the type of relief sought. Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. A court's lack of subject matter jurisdiction is not waivable and can be raised at any time, including on appeal.

*Banks v. Hunter*, 251 N.C. App. 528, 531, 796 S.E.2d 361, 365 (2017) (cleaned up).

The sole disputed evidentiary issue at the contested case hearing in this matter was whether Petitioner's 20 March 2020 Grievance Form was timely filed. Petitioner testified that his wife mailed the form the same day he completed it and that he personally observed her stamp the envelope and put it in the mailbox. Petitioner was mailing the Grievance Form from Fayetteville to Raleigh. Respondent's Grievance Intake Coordinator testified that this original copy of the form was never received by Respondent; instead, a legible electronic copy of the form was not received until 9 April 2020—16 days after the 24 March 2020 deadline. The Grievance Intake Coordinator admitted, however, that many of Respondent's employees were working remotely in March and April of 2020 because of the COVID-19 pandemic and that the mail was not being checked daily. The ALJ made no express finding regarding the timeliness of the filing of the Grievance Form but she denied Respondent's renewed motion to dismiss for lack of subject matter jurisdiction based on "the effects COVID-19 . . . on the operation of our State government offices[.]" This ruling implies that the ALJ credited Petitioner's testimony, and implicitly found that the Grievance Form was timely filed. The ALJ's conclusion of law that she had subject matter

jurisdiction over the case likewise necessitates that the ALJ found the Grievance Form was timely filed, despite not doing so expressly.

¶ 25     We hold that there is a rational basis in the evidence for the finding that the Grievance Form was timely filed.  Under the whole record test, the reviewing court "must examine all the record evidence—that which detracts from the agency's findings and conclusions as well as that which tends to support them—to determine whether there is substantial evidence to justify the agency's decision."  *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 660, 599 S.E.2d 888, 895 (2004) (citation omitted). "Substantial evidence" means "[r]elevant evidence a reasonable mind might accept as adequate to support a conclusion."  N.C. Gen. Stat. § 150B-2(8c) (2021).

> In a contested case under the APA, as in a legal proceeding initiated in District or Superior Court, there is but one fact-finding hearing of record when witness demeanor may be directly observed.  It is also well established that in an administrative proceeding, it is the prerogative and duty of the ALJ, once all the evidence has been presented and considered, to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence.  The credibility of witnesses and the probative value of particular testimony are for the ALJ to determine, and the ALJ may accept or reject in whole or part the testimony of any witness.  Our review, therefore, must be undertaken with a high degree of deference as to the credibility of witnesses and the probative value of particular testimony.  As our Supreme Court has explained, the ALJ who conducts a contested case hearing possesses those institutional advantages that make it appropriate for a reviewing court to defer to his or her

findings of fact.

*Brewington v. N.C. Dep't of Pub. Safety*, 254 N.C. App. 1, 13, 802 S.E.2d 115, 124-25 (2017) (cleaned up).

On 24 March 2020, when the Grievance Form was due, North Carolina Governor Roy Cooper had declared a state of emergency in response to the COVID-19 pandemic. *See* Exec. Order No. 116 (2020). Respondent had allowed telecommuting for non-essential personnel, suspended staff training, limited external movement by offenders to reduce potential COVID-19 spread, and suspended visitation and volunteering at all prisons. Director and Chief Judge Julian Mann of OAH had encouraged all OAH employees to telecommute, and as of 18 March 2020, only "[a] very small number of managerial employees, as safety permits, ha[d] elected to be physically present in OAH, mostly on a staggered basis[.]" As Respondent's Grievance Intake Coordinator admitted on cross-examination, many of Respondent's employees were working remotely in March and April of 2020 because of the COVID-19 pandemic. Mail was not being checked daily.

Against this backdrop, in denying Respondent's motions to dismiss for lack of subject matter jurisdiction, the ALJ chose to credit Petitioner's testimony that his wife mailed the Step 1 Grievance Form on 20 March 2020 and that the Grievance Form was timely filed even though Respondent's Grievance Intake Coordinator testified that she did not receive an electronic copy until 7 April 2020. Giving

appropriate deference to the ALJ, who was present in this case for the only "fact-finding hearing of record when witness demeanor [could] be directly observed[,]" *id.* at 13, 802 S.E.2d at 124, and specifically, the ALJ's credibility determination with respect to Petitioner's testimony, we hold that the finding implicit in the ALJ's rulings denying Respondents' motions to dismiss for lack of subject matter jurisdiction—that the Grievance Form was timely filed—has a rational basis in the evidence under the whole record test. To hold otherwise would effectively require us to re-weigh the evidence before the ALJ and substitute our own credibility determination for that of the ALJ, which we cannot do as a reviewing court under the whole record test. *See Carroll*, 358 N.C. at 660, 599 S.E.2d at 895.[1]

### III. Conclusion

We affirm the decision of the ALJ because the ALJ chose to credit Petitioner's testimony regarding the filing of his Step 1 Grievance Form. Since Petitioner first exhausted his administrative remedies before filing a contested case in OAH, the ALJ had subject matter jurisdiction over this contested case.

AFFIRMED.

Judge CARPENTER concurs.

---

[1] Respondent offers no argument that the ALJ's determinations regarding Respondent's failure to comply with state personnel policy on separation due to unavailability was error, and any such error is therefore deemed abandoned. *See* N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned.").

Judge TYSON dissents by separate opinion.

TYSON, Judge, dissenting.

The decision of the ALJ is properly reversed and remanded with instructions to dismiss Petitioner's case for lack of subject matter jurisdiction. I respectfully dissent.

## I.    Factual and Procedural Background

Petitioner's employment with the Department of Public Safety ("DPS") was terminated as of 3 March 2020 via a separation letter he received on 9 March 2020. If Petitioner wished to invoke a grievance review process, a "Step 1 Grievance Mediation Form" ("Step 1 Form") was required to be filed before the fifteenth calendar day after receipt of the letter or 24 March 2020. The Step 1 Form states: "[t]o file a grievance, *you must submit this form* within 15 calendar days of the event (or knowledge of the event) *that you are grieving*; otherwise, your grievance cannot be accepted." (emphasis supplied). The 3 March 2020 separation letter stated that the Step 1 Grievance Form "*must be received* by the Grievance Intake Coordinator on or before the fifteenth (15th) calendar day after receiving this letter" to be considered timely. (emphasis supplied).

Petitioner alleged he mailed the letter on 20 March 2020, but it was not marked as received by the Grievance Intake Coordinator until 8 April 2020, and only then after Petitioner had emailed a copy of the form. The purported *mailed* Step 1 Form was *never received* by the DPS Grievance Intake Coordinator.

Petitioner's emailed Step 1 Form was marked "as received" on 9 April 2020 and

was deemed to be untimely. Petitioner's appeal was administratively dismissed. Petitioner filed a Petition for a Contested Case Hearing in the Office of Administrative Hearings ("OAH"). DPS moved for dismissal, arguing Petitioner had failed to timely invoke and exhaust his administrative remedies by completing the internal grievance process and receiving a final agency decision, and asserted OAH lacked subject matter jurisdiction to review the case. The ALJ denied the motion.

¶ 33 As is correctly stated by the majority's opinion: "The ALJ made no express finding regarding the timeliness of the filing of the Grievance Form, but denied Respondent's renewed motion to dismiss for lack of subject matter jurisdiction based on 'the effects COVID-19 . . . on the operation of our State government offices[.]'" DPS appeals.

## II. Issues

¶ 34 Respondent asserts two issues on appeal: (1) whether former Chief Justice Beasley's order extending the time and periods of limitation due to COVID-19 applies to the internal grievance process under Office of State Human Resources (OSHR); and, (2) whether the ALJ erred in denying Respondent's Motion to Dismiss for lack of subject matter jurisdiction.

## III. Analysis

### A. Chief Justice's Order

¶ 35 Chief Justice Beasley's order titled "Extension of Time and Periods of

Limitation Pursuant to N.C.G.S. § 7A-39(b)(1)" provides:

> all pleadings, motions, notices, and other documents and papers that were or are due to be filed in any county of this state on or after 16 March 2020 and before the close of business on 1 June 2020 in civil actions, criminal actions, estates, and special proceedings shall be deemed to be timely filed if they are filed before the close of business on 1 June 2020.
>
> all other acts that were or are due to be done in any county of this state on or after 16 March 2020 and before the close of business on 1 June 2020 in civil actions, criminal actions, estates, and special proceedings shall be deemed to be timely done if they are done before the close of business on 1 June 2020.

On 18 March 2020, Chief Judge Mann of the OAH also extended the filing deadlines based upon COVID-19.

The extension of time for filing asserted under N.C. Gen. Stat. § 7A-39 is expressly applicable only to those pleadings and documents filed with the courts within the Judicial Branch and to those matters and actions attendant thereto within the Judicial Branch. The statute grants the Chief Justice the authority to cancel court sessions and extend the time of filing for documents, motions, and papers in cases before the courts. N.C. Gen. Stat. § 7A-39 (2021).

It does not extend the time of filing for Executive Branch internal agency grievance processes. Chief Justice Beasley's 13 March 2020 order did not extend Petitioner's duty to timely file his Step 1 Form to invoke the jurisdiction of DPS'

administrative review process. *See id.*

¶ 39 The Chief Justice's authority to extend the time for Judicial Branch filings under N.C. Gen. Stat. § 7A-39 and Chief Judge Mann's extension of filing in the OAH did not to extend every internal Executive Branch agency filing deadline. Petitioner's argument is without merit.

## B. Lack of Subject Matter Jurisdiction

¶ 40 To properly initiate a contested case before the OAH, a state employee must first invoke and exhaust his agency's internal administrative remedies. The state employee must *complete* the internal grievance process, receive a final agency decision, and receive final review and approval of that decision by OSHR to invoke and exhaust his administrative remedies, prior to appealing to OAH. N.C. Gen. Stat. § 126-34.01 (2021).

¶ 41 In order to invoke jurisdiction to pursue the grievance process, the state employee carries the burden under the statute to show he timely filed a Step 1 Form within 15 days of the event (or knowledge of the event) for which the employee is grieving. If the employee fails to initiate the grievance process within the required 15 days, jurisdiction is not involved, the internal grievance process is hated, and the grievance is administratively dismissed, the internal grievance process is halted, with no further action by the agency or OSHR.

¶ 42 Petitioner's assertion that he or his wife timely mailed the Step 1 Form does

not carry his jurisdictional burden. The employee must timely invoke and exhaust his agency's internal administrative remedies prior to petitioning for a contested case hearing before OAH. Petitioner incorrectly argues this jurisdictional prerequisite puts the employee in a "Catch-22" situation, asserting he is unable to exhaust his administrative remedies *and* unable to appeal the agency decision. He admittedly received notice his of separation by letter and chose to purportedly invoke internal agency jurisdiction by a means, which left no objective certificate or proof of timely filing. Petitioner's assertion has no merit.

¶ 43        Petitioner further argues this Court's decision in *Erickson* requires this Court to affirm the ALJ's denial of DPS' motion to dismiss. *Erickson v. N.C. Dep't of Public Safety,* 264 N.C. App 700, 826 S.E.2d 821 (2019). In *Erickson,* DPS alleged Erickson had missed his deadline to continue his appeal from Step 1 to Step 2 in the internal grievance process. *Id*. at 701, 826 S.E.2d at 823. The Step 2 Form stated it had to be *filed* within 5 calendar days, but also that if it was not *received* within that timeframe, it would not be accepted. *Id*. at 707, 826 S.E.2d at 826. This Court determined the language in the form was conflicting and ambiguous and construed it against the drafting party. *Id*. This Court ultimately held Erickson's petition for a contested case hearing was proper despite not having timely exhausted his administrative remedies. *Id*.

¶ 44        *Erickson* is easily distinguishable from the facts before us. Erickson's mailed

Step 2 Form *was received* one day late, whereas here, the mailed initiation of process Step 1 Form was *never received*. The issue before the Court in that case was whether, given the ambiguity of the form's instructions, Erickson had substantially complied with the form when viewed in the light most favorable to him. *Id.* at 706, 826 S.E.2d at 826. The agency's jurisdiction had already been timely invoked. *See id.*

¶ 45        Here, Petitioner's form was not received until 15 days after the deadline, and only then after Petitioner emailed the admittedly untimely form. He failed to comply with and invoke DPS' internal grievance process. Petitioner's failure deprived OAH of jurisdiction to hear the contested case. N.C. Gen. Stat. § 126-34.01.

## IV.        Conclusion

¶ 46        Statutes of limitations and repose limit and cut off the ability of a claimant, even with a meritorious claim, to timely assert rights. These statutes can be jurisdictional where the burden to show compliance therewith rests upon the claimant. Compliance is not satisfied by the bald assertions of timely filing by the party with the burden, where the record is devoid of any objective compliance. A claimant, even with a valid ticket, who arrives at the station late sees the train has already left. Those who timely arrived and boarded the train get to travel. Those who did not will be left on the station's platform, even if entitled to board and the train is just pulling away.

¶ 47        No objective evidence shows Petitioner carried his burden to timely invoke

DPS' internal and jurisdictional grievance process. The extensions of times in the Judicial Branch and the OAH has no impact on an Executive Agency's internal jurisdictional procedures.

¶ 48 The employee must timely invoke and exhaust his agency's internal administrative remedies prior to petitioning for a contested case hearing before OAH. *Id*. This he failed to do. Neither the ALJ nor COVID can excuse a jurisdictional defect.

¶ 49 DPS' jurisdictional review train left the station on schedule. Petitioner was not on board. I vote to reverse the ALJ and remand to dismiss for lack of OAH jurisdiction. I respectfully dissent.